UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| D'YANI C. KELLY, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 17-7480 |
| v. | : | OPINION |
| BEAUTY SYSTEMS GROUP, LLC ET AL, | : | |
| Defendants. | : | |

This matter is before the Court on a Motion for Summary Judgment filed by Defendant, Beauty Systems Group, LLC, d/b/a Cosmo Prof ("Defendant" or "Cosmo Prof") [Dkt. No. 47] and a Motion for Summary Judgment filed by Third Party Defendants, Jay Birnbaum-Cherry Hill, LLC and ILF-Cherry Hill, LLC ("Third Party Defendants") [Dkt. No. 40]. The Court has considered the written submissions of the parties, as well as the arguments advanced at the hearing on November 20, 2019. For the reasons stated on the record that day, as well as those that follow, Defendant Cosmo Prof's motion will be granted, and Third Party Defendants' motion will be granted.

I.  Background

This is a negligence action involving a floor mat, a trip, and a subsequent fall. On August 13, 2015, D'yani Kelly ("Plaintiff"), her mother ("Ms. Greene") and her daughter ("Ms. Warren") were shopping in Cosmo Prof store. Pl. Dep. 31:6-10. Defendant keeps a floor mat in front of the exit and entrance door. Id. The mat was black "with rubber edges and like a scruffy raised top to it. I suppose you could call it an all weather mat." Id. at 41:3-10. This "non-slip" mat took up the full length of the doors, where customers could wipe off their feet. Roscoe Dep. at 41:1-2. According to Plaintiff, while "casually"

1

walking to exit Defendants store "her left foot caught the edge of the [mat] at the exit door, causing her ankle to turn over. Plaintiff continued to walk out to her car in the parking lot when her ankle gave out and she fell to the ground, both hands extended. She landed on her hands and right knee, injuring her knee, hands, and shoulder." Pl. Interrog. ¶ 2.; Pl. Dep. 43. There is no dispute in this case that Plaintiff did not fall while in the Cosmo Prof store. She alleges that she tripped, caught herself, and then fell in the parking lot making her way to her car.

## A. Plaintiff's Trip

On the day of Plaintiff's accident, Plaintiff was wearing a sundress with wedge sandals. Pl. Dep. 38:1-5. Two employees were working at the Cosmo Prof store, Linda Pennestri ("Ms. Pennestri") and Billie Roscoe ("Roscoe"). Neither employee witnessed Plaintiff trip on the floor mat. Ms. Warren, Plaintiff's daughter, was standing next to Plaintiff when she tripped; she was the only person to witness the accident. Warren Dep. 36:7-12. She testified that Plaintiff "was walking, and then the rug like caught the front end of her foot." Warren Dep. 36:19-22. She recalled that the black mat had one corner "a little flipped up, but [she] didn't realize it until after [Plaintiff] tripped." Id. at 31:20-24.

Following Plaintiff trip, Plaintiff also noticed that the floor mat was not laying totally flat. Pl. Dep. 41:13-14. Ms. Greene testified that when she looked at the mat "it was just ruffled. . . . it was just a worn rug. . . . It wasn't flat." Greene Dep. 33:6-13. Plaintiff, her mother, and her daughter had not observed the conditions of the mat prior to when Plaintiff tripped. Likewise, Cosmo Prof employees only inspected the mat after Plaintiff tripped. Ms. Pennestri noticed at the "very corner of the mat there was a little pull." She testified that she thought "the nylon just caught the end of her heel. But it wasn't a big

2

hole or anything that would have caused a fall, which she didn't fall in the store." Pennestri Dep at 29. According to Ms. Pennestri, the "pull" was "not bad where you need to tape it down or replace it. . . . it's like little bumps on the carpet to tread. To get the dirt off stuff." Id. at 34:17-35:2. According to Ms. Roscoe, the mat had been ripped up "just a tiny bit but no one had noticed it before then . . . At least [she] hadn't until [Plaintiff's mother] brought it to [her] attention;" it was "just maybe a half an inch." Roscoe Dep. 43:14-23; 44:1-6.

At the time of Plaintiff's accident, Ms. Pennestri had been working at Cosmo prof for about 8 years, since 2007. During her employment, Ms. Pennestri never saw the mat in question become "bunched up . . . or curled over or wrinkled." Pennestri Dep. 36:10-15. At the time of her deposition, Cosmo Prof was using the same floor mat at the entrance that was used on August 13, 2015. Id. at 37:13-24. It was not altered or removed. Id. Prior to Plaintiff's incident, no one had ever tripped on the floor mat, or complained about the floor mat while Ms. Pennestri was employed with Defendant. Id. at 27:1-2; 41-42.

Ms. Roscoe was employed with Cosmo Prof for a total of almost two years, from June 2015 through May 2017. Roscoe Dep. 30:2-5. During the months she was employed prior to Plaintiff's trip in August 2015, Ms. Roscoe never saw or heard of anyone else tripping on the floor mat. Id. at 41:2-16; 43:1-5. She also testified that no one complained about the mat on the day Plaintiff allegedly tripped in the store. Id. at 41:20-42:1. Plaintiff herself had been to Cosmo Prof many times, but never witnessed anyone else catch their foot on the exit mat. Pl. Dep. 33:19-25. This was the first time her foot caught the mat. Id. at 34:1-2.

3

Cosmo Prof does not maintain procedures to inspect the floor mat, however, the employees vacuum the mat "every night." Pennestri Dep. at 35. Ms. Roscoe explained the maintenance procedures for closing the store as follows: "we would take a push mop and push the dust to a central location, which was usually the middle of the mat, so whoever did that, which was usually me because I hate vacuuming, would dust that off and then the other person would take the vacuum and vacuum the mats inside and out." When she would vacuum, she would only roll over where the dirt was, but she saw that when other employees vacuumed, they would roll over the whole mat, "including edges." Roscoe Dep. 63:15-21; 64:17-23.

### B. Plaintiff's Fall

After Plaintiff tripped on the floor mat inside the Cosmo Prof store, she continued to exit the store and walk to her car, which was located in the store's shopping center parking lot, in the first lane of parking spots. Plaintiff testified that her ankle "went out" from under her "when [she] went to take that last step with the left foot" and she fell forward to the ground. Pl. Dep. 48:1-10. At her deposition, Plaintiff recounted the following details:

> Q. Could you describe for me the exact location of your fall in that parking lot an in terms of how far from your car, any other landmarks or anything like that that you could reference where your fall occurred?
>
> A. Yes. I walked through the parking lot. There was a big long, oblong pothole. My mom and my daughter went across the pothole. I was on the opposite side of it. When I got beyond the pothole is where my ankle gave out and I hit the ground.
>
> Q. So you had to walk all the way around the pothole, is that what you are telling me?
>
> A. They walked across the pothole. I was on the opposite side. I didn't have to cross it.

4

Q. Were there debris or stoned or anything like that in the parking lot?

A. No.

Id. at 47: 9-48:2. Plaintiff's mother and daughter witnessed her fall. Both testified that the Plaintiff did not fall as a result of tripping, slipping, or encountering a pothole in the parking lot. Greene Dep 59; Warren Dep. 40:17-41:3. Plaintiff's daughter specifically stated, "she walked around the pothole," and explained that she did not know if Plaintiff tripped per se, but that "she couldn't walk anymore, and her ankle gave out." Warren Dep. 40:17-41:3.

The two employees did not personally witness the incident. Ms. Roscoe filled out an incident report that stated: "Next time I saw [the Plaintiff], she was on the ground near the huge hole in the parking lot where her car was parked. Mother came in [and[ wanted accident report." See Ex. C attached to Def. Op (Cosmo Prof Accident Report). In her second written statement, Ms. Roscoe stated that she was "working on [the] nail racks" when she saw Plaintiff "on the ground outside near a deep pothole. My first thought seeing this was she fell because of the hole." See Ex. D attached to Def. Op (Roscoe Written Statement). At her deposition, Ms. Roscoe explained that she did not actually "she her fall in the pothole," let alone fall at all, she "only saw her sitting behind what [she] assumed was her car." Roscoe Dep. 58; 61:1-10. Ms. Roscoe has not seen photos, video, or encountered other evidence that showed Plaintiff's "foot go into the pothole or that [Plaintiff] was caused to trip by contacting the pothole." Id. at 61:11-17.

## C. Procedural History

Plaintiff initiated this action against Defendant Cosmo Prof alleging one Count for negligence in July 2017. On September 26, 2017, Defendant removed the case to this Court. [Dkt. No. 1]. On January 8, 2018 Defendant filed a Third Party Complaint against

the Third Party Defendants,  Jay Birnbaum-Cherry Hill, LLC and ILF-Cherry Hill, LLC, claiming contribution and indemnification. [Dkt. No. 11]. Third Party Defendants own the shopping center and parking lot where Cosmo Prof is located. They "leased one of the retail stores within the shopping center" to Cosmos Prof. Accordingly, Third Party Defendants are responsible for maintaining the parking lot where Plaintiff ultimately fell. See [Dkt. No. 40, Third Party Def. Brf.]. Third Party Defendants filed a Motion for Summary Judgment pursuant to Fed. R. Civ. Pro. 56 seeking dismissal of Cosmo Prof's Complaint. [Dkt. No. 40]. Shortly after, Defendant Cosmo Prof (also Third Party Plaintiff) filed a Motion for Summary Judgment pursuant to Fed. R. Civ. Pro. 56 seeking dismissal of Plaintiff's action for negligence. The Court heard Oral Argument on both motions at a hearing held on November 20, 2019.

II.     Summary Judgment Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a

dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256–57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

III.     Analysis

A.  **Defendant Cosmo Prof's Motion for Summary Judgment**

Defendant moves for summary judgment arguing that Plaintiff's negligence claim fails as a matter of law for two reasons: (1) the floor mat, upon which Plaintiff tripped, is not a dangerous condition, and (2) even if the floor mat is a dangerous condition, Defendant had no actual or constructive notice of any such dangerous condition. (Def. Brf. at 5-8).

To establish a claim for negligence, plaintiff must prove "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages [.]" Weinberg v. Dinger, 524 A.2d 366, 373 (N.J. 1987). Accordingly, "in any case founded upon negligence, the proofs ultimately must establish that defendant breached a duty of reasonable care, which constituted a proximate cause of the plaintiff's injuries." Brown v. Racquet Club of Bricktown, 471 A.2d 25, 29 (N.J. 1984) (citing Hansen v. Eagle-Picher Lead Co., 84 A.2d 281, 288 (N.J. 1951). In a case such as this, based on premises liability, the duty of care owed will depend on both defendant's and plaintiff's status.

Here, there is no dispute that Defendant is the proprietor of commercial premises, and plaintiff its invitee. Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110, 1114 (N.J. 1993) (an invitee is an individual "invited on the premises for purposes of the owner that often are commercial or business related"). "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 316 (N.J. 2003). That duty of care "requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions

8

that would render the premises unsafe." Id. (citing O'Shea v. K. Mart Corp., 701 A.2d 475 (N.J. App. Div. 1997)).

The pertinent issue here, is whether the Cosmo Prof floor mat was a dangerous condition. Defendants argue, and the Court agrees, that Plaintiff has failed to "identify the existence of a dangerous or hazardous condition that caused her fall." Def. Brf. at 7. According to the testimony in the record, the floor mat was "not flat" it was "ruffled" or "ripped up just a tiny bit" in the corner, "[i]t was just like a buckle" approximately a "half-inch." Plaintiff, however, provides no evidence that such a condition is dangerous or hazardous. The record is devoid of any other evidence as to the condition of the mat. There is no video or photograph of the mat in question, nor is there expert testimony as to its condition.[1] The Court, therefore, is not convinced that there is sufficient evidence that the floor mat constituted a dangerous condition. Alexandrow v. Yardville Nat. Bank, No. A-4595-08T3, 2009 WL 4254530, at *4 (N.J. Super. Ct. App. Div. Dec. 1, 2009) ("[A]fter the [plaintiff's] fall, the carpeted floor mat was curled up a little on the right side. For completeness, plaintiff is entitled to the inference that her right foot 'must have caught it or something.' We cannot discern how this amalgam translates into a breach of duty, much less anything more than an example of an inexorable law of physics: gravity is stronger than bipedalism"). To be sure, Defendant continued to use the same floor mat, in the same condition, after Plaintiff's incident for at least four years. Regardless,

---

[1] At oral argument, the Court inquired as to whether anyone has observed the mat with a degree of credibility to say it was in a defective condition. Plaintiff explained there was no direct observation of the mat, the only evidence as to its condition is testimony of the store employees at the time of the accident, Plaintiff did not have an expert look at the mat, and does not have photos of the mat depicting the alleged defect in the corner.

even if the rippled floor mat presented a dangerous condition Plaintiff has failed to show that Defendant either created the condition or had notice of it.

A business "proprietor generally is not liable for injuries caused by defects of which he had no actual or implied knowledge or notice, and no reasonable opportunity to discover." Brown v. Racquet Club of Bricktown, 471 A.2d 25, 30 (N.J. 1984). Thus, premises liability is established when a plaintiff shows "a defendant knew or had the reasonable opportunity to discover and correct the defect." Prioleau v. Kentucky Fried Chicken, Inc., 85 A.3d 1015, 1022 (N.J. Super. App. Div. 2014), aff'd as modified and remanded, 122 A.3d 328 (N.J. 2015). Here, there is no dispute that the only evidence pertaining to the condition of the floor mat consists of testimony concerning what was observed *after* Plaintiff allegedly tripped. There is nothing in the record establishing actual notice, and Plaintiff does not argue that actual notice exists.

Plaintiff contends, however, that a jury could infer that Cosmo Prof created the dangerous condition (the buckled mat corner) through its cleaning procedures. In that regard, Plaintiff argues that Defendant's employees vacuum the mat every night, and "the vacuum cleaner could have easily turned up the corner on this [mat]." Plaintiff further relies on this sole fact—that employees vacuum the floor mat—to suggest Defendant had the opportunity to inspect the mat and therefore, breached its duty in failing to find the "defect." Nothing in the record, however, suggests the duration of the alleged defect in the floor mat. Plaintiff fails to provide any evidence of when the condition manifested. See Wierzbowski v. Sam's E., Inc., No. A-3401-13T4, 2015 WL 4557802, at *4 (N.J. Super. Ct. App. Div. July 30, 2015) (affirming summary judgment where "Plaintiffs' theories about how the mat became dog-eared, how long that condition existed, and whether the [employee] had sufficient time to observe it,

10

consisted of nothing more than conjecture").[2] Additionally, there are no facts in the record demonstrating that vacuuming the floor mat could have caused a dangerous condition, any more so, than the possibility that Plaintiff herself created the condition when she tripped. Rivera v. Columbus Cadet Corps of Am., 59 N.J. Super. 445, 450, 158 A.2d 62, 65 (App. Div. 1960) ("Negligence is never presumed, and the mere occurrence of an accident causing injuries is not alone sufficient to justify an inference of negligence." (citations omitted)). Plaintiff is simply guessing when and how the condition of the floor mat arose.

Furthermore, the record establishes that Plaintiff visited Cosmo Prof store "many times" prior to her accident in August 2015. On those prior visits, Plaintiff had no issue with Defendant's floor mat and did not observe its condition. Pl. Dep. 33:19-25. In the immediate months leading up to Plaintiff's accident, there were no reported incidents or complaints about the exit door floor mat. In fact, throughout the five years preceding Plaintiff's accident, Defendants had no accident reports related to the mat. During the eight years Ms. Pennestri was working, she never heard of a complaint concerning the floor mat or of an accident. Furthermore, on the day Plaintiff tripped, there were no complaints about the floor mat. Finally, Ms. Pennestri further testified that she never saw the mat in question, become "bunched up . . . or curled over or wrinkled." Pennestri Dep. 36:10-15. See Larkin v. Super Fresh Food Markets, Inc., 291 F. App'x 483, 485 (3d Cir. 2008) ("Without evidence about when the mat became buckled, a fact-finder could

---

[2] In Wierzbowski v. Sam's E., Inc, the plaintiff claimed to trip and fall because of an alleged dangerous condition in a floor mat—the mat being "dog-eared." Similar to the case here, plaintiff suggested defendant created the condition in how it was storing the mats. But plaintiff failed to produce evidence "concerning the pliability or characteristics of the materials from which the mats were made, nor . . . evidence that storing mats in a rolled-up manner could create a defect." Additionally, there was no evidence as to how long the condition existed. The court found the evidence insufficient to establish negligence.

only speculate about whether [defendant] should have discovered and corrected the problem. Therefore, as a matter of law, [defendant] did not have constructive notice."). Accordingly, there is no genuine factual dispute for the jury, as there are no facts from which a jury can reasonably infer that Defendant created or should have known about a defect in its mat. Prioleau v. Kentucky Fried Chicken, Inc., 85 A.3d 1015, 1022 (N.J. App. Div. 2014), aff'd as modified and remanded, 122 A.3d 328 (N.J. 2015) ("An inference [of negligence] can be drawn only from proved facts and cannot be based upon a foundation of pure conjecture, speculation, surmise or guess." (citing Long v. Landy, 171 A.2d 1, 7 (1961)).

Therefore, the Court will grant Defendant's Motion for Summary Judgment and dismiss Plaintiff's Complaint.

### B. Third Party Defendants' Motion for Summary Judgment

Third Party Defendants' move for summary judgment on the basis that Cosmo Prof (Third Party Plaintiff) has failed to show any evidence that Third Party Defendants' are liable for negligence. Specifically, Third Party Defendants' contend that Cosmo Prof, and Plaintiff, cannot provide any evidence that their alleged negligence caused Plaintiff to fall and further sustain any injuries. The Court agrees.

There is no dispute in this case that Plaintiff tripped in Cosmo Prof, but did not fall. After Plaintiff tripped, she subsequently fell in the parking lot of the shopping center where Cosmo Prof is located. There is also no dispute that on the day of the incident, there was a pothole in that parking lot. Third Party Defendants own the parking lot and are responsible for its maintenance. Accordingly, Cosmo Prof filed a Third Party complaint against Third Party Defendants on a theory that the pothole in the parking lot

caused or contributed to Plaintiff's fall. However, the record clearly establishes that the pothole played no role in Plaintiff's accident.

The witnesses to Plaintiff's fall, her mother and daughter, both testified Plaintiff did not fall as a result of tripping, slipping, or encountering a pothole in the parking lot. Greene Dep 59; Warren Dep. 40:17-41:3. Plaintiff's daughter specifically stated, "we walked out of the store. She walked around the pothole, and she fell right before she got to the car," Plaintiff's "ankle gave out." Warren Dep. 40:17-41:3. Cosmo Prof alleges that despite the witness testimony, there is a genuine dispute as to whether the pothole caused Plaintiff's fall because employee, Ms. Roscoe, stated that Plaintiff was on the ground "near" the pothole. Def. Ex. C; Ex. D. Though Ms. Roscoe noted that fact in her report, <u>she did not see Plaintiff fall</u>. She further clarified her original statement at her deposition: Ms. Roscoe has not seen photos, video, or encountered other evidence that showed Plaintiff's "foot go into the pothole or that [Plaintiff] was caused to trip by contacting the pothole." Roscoe Dep. at 61:11-17. Simply put, Ms. Roscoe cannot, and admittedly, does not know whether the pothole played any role in Plaintiff's fall.

Therefore, not only is Ms. Roscoe's assumption that Plaintiff may have fallen due to the large pothole insufficient to preclude summary judgment, but Plaintiff herself does not incriminate the pothole. In fact, Plaintiff acknowledged its existence and explicitly stated: "I walked through the parking lot. There was a big long, oblong pothole. My mom and my daughter went across the pothole. I was on the opposite side of it. When I got beyond the pothole is where my ankle gave out and I hit the ground." Pl. Dep. 47: 9-48:2. In addition, at oral argument Plaintiff's counsel made clear that Plaintiff never alleged that the parking lot was the cause of her fall or that a pothole was

the cause of the fall, nor does she now allege any defect in the parking lot caused her fall. Therefore, the Court will grant Third Party Defendants' motion.

IV.     Conclusion

For the forgoing reasons, Defendant Cosmo Prof's Motion for Summary Judgment will be granted, and Third Party Defendants' Motion for Summary Judgment will be granted; Plaintiff's claim and Cosmo Prof's Third Party Complaint will be dismissed.

An appropriate Order shall issue.

Dated: December 9, 2019

      /s/ Joseph H. Rodriguez
HON. JOSEPH H. RODRIGUEZ
United States District Judge